**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 25-11883

Non-Argument Calendar

————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

KYLE KERIAN MAHARAJ,

*Defendant-Appellant.*

————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:24-cr-60196-DSL-1

————————————

Before JORDAN, KIDD, and BLACK, Circuit Judges.

PER CURIAM:

Kyle Kerian Maharaj appeals the district court's denial of his motion to dismiss his criminal indictment charging him with un-

lawful reentry of a removed alien under the Immigration and Nationality Act (INA).  8 U.S.C. § 1326(a), (b)(2).  In his motion, Maharaj brought a collateral attack against his prior deportation order under 8 U.S.C. § 1326(d).  Maharaj argued he satisfied the three prongs of a successful collateral attack because (1) he exhausted his administrative remedies to seek relief from the prior deportation order, as he contested his removability, provided documents in support, and requested further review, (2) he was denied a hearing before an immigration judge due to the erroneous application of expedited removal proceedings, and (3) the deportation order was fundamentally unfair because it was premised on the improper classification of a Florida robbery conviction—for which he was sentenced to two years of "community control" and not a term of imprisonment of at least one year—as an "aggravated felony" under the INA.

The district court denied the motion, determining he failed to mount a successful collateral attack on all three elements of § 1326(d).  After review,[1] we affirm the district court as Maharaj has failed to satisfy both the second and third prongs[2] of the requirements for a collateral attack.

---

[1] A defendant's collateral challenge to his underlying deportation order is an issue of law reviewed de novo.  *See United States v. Zelaya*, 293 F.3d 1294, 1297 (11th Cir. 2002).

[2] Because we conclude that Maharaj's arguments under the second and third prongs of 8 U.S.C. § 1326(d) fail, we need not address Maharaj's argument that the district court erred in determining he also failed the first prong.

## I. DISCUSSION

Maharaj's arguments regarding the second and third prongs of § 1326(d) are based on his argument that his prior Florida robbery conviction did not qualify as an aggravated felony because he was sentenced to two years of community control, which does not qualify as a term of imprisonment of at least one year. He asserts the Notice of Intent to issue a Final Administrative Removal Order (FARO) was fundamentally unfair because it was premised on the erroneous legal conclusion that he had been convicted of an "aggravated felony" under the INA. He contends his counsel should have sought judicial review after the FARO issued on whether his Florida conviction qualified as an aggravated felony, and this showing of ineffective assistance satisfies both the deprivation of judicial review and fundamental unfairness prongs of § 1326(d).

If an alien who has been denied admission, excluded, deported, or removed enters or attempts to enter the United States without the consent of the United States Attorney General, he is subject to imprisonment and criminal fines. 8 U.S.C. § 1326(a). In a criminal proceeding under this section, an alien may not challenge the validity of an underlying deportation order unless the alien demonstrates that (1) he exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived him of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair. 8 U.S.C. § 1326(d)(1)–(3).

The INA provides for expedited proceedings and a presumption of deportability for aliens who have committed an "aggravated felony." 8 U.S.C. § 1228(b)–(c). The term "aggravated felony" means, among other things, a "crime of violence" (as defined in 18 U.S.C. § 16) for which the alien was sentenced to a "term of imprisonment" of at least one year. 8 U.S.C. § 1101(a)(43)(F). "Any reference to a term of imprisonment or a sentence with respect to an offense is deemed to include the period of incarceration *or* confinement ordered by a court of law regardless of any suspension of the imposition or execution of that imprisonment or sentence in whole or in part." 8 U.S.C. § 1101(a)(48)(B) (emphasis added).

In *Herrera v. United States Attorney General*, the petitioner had been convicted of burglary in Georgia and sentenced to "confinement for a period of [five] years," which he was allowed to serve on probation if he served one year under house arrest. 811 F.3d 1298, 1299 (11th Cir. 2016). The BIA determined that Herrera's offense was an "aggravated felony" rendering him ineligible for cancellation of removal because it resulted in a qualifying "term of imprisonment," explaining the Georgia court used "confinement" to mean imprisonment alternative to house arrest, and the one year of house arrest itself constituted a form of confinement that satisfied the definition of "aggravated felony." *Id.* at 1300. In denying Herrera's petition for review, we reasoned the INA defines a "term of imprisonment" as a "period of incarceration *or* confinement." *Id.* (quoting 8 U.S.C. § 1101(a)(48)(B)) (emphasis added in *Herrera*). The disjunctive "or" reinforced that "confinement" meant something other than "incarceration." *Id.* at 1301; *see also*

*Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979) ("Canons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings, unless the context dictates otherwise."). Further, we reasoned that "a 'term of imprisonment . . . includes . . . any suspension of the imposition or execution of . . . [a] sentence,' 8 U.S.C. § 1101(a)(48)(B), which suggests that it must encompass 'more than just time spent in jail.'" *Herrera*, 811 F.3d at 1301 (citing *Ilchuk v. Att'y Gen. of the U.S.*, 434 F.3d 618, 623 (3d Cir. 2006)). We also explained the federal understanding of house arrest shared similarities with imprisonment, such that the BIA "reasonably concluded" that house arrest was a "punitive measure that involves a 'serious restriction of liberty'" that constituted confinement and was a term of imprisonment under the INA. *Herrera*, 811 F.3d at 1301 (quoting *Ilchuk*, 434 F.3d at 623). We concluded, "Herrera's burglary offense, for which he was sentenced to a term of imprisonment [of] at least one year, qualified as an aggravated felony and made him ineligible for cancellation of removal." *Id.* (quotation marks omitted).

As an initial matter, Maharaj's argument that *Singh v. U.S. Att'y Gen.*, 561 F.3d 1275 (11th Cir. 2009), controls this case, fails. In *Singh*, we held that res judicata did not bar the government's claim that an alien was subject to expedited removal proceedings because the predicate of that claim—that the alien committed an aggravated felony under the INA—did not exist until he violated the conditions of his community control and he was sentenced to a term of imprisonment greater than one year. *Id.* at 1277, 1280.

*Singh* does not directly address whether Florida community control constitutes a "term of imprisonment" under the INA. *Id.* Maharaj asks this Court to make the inferential step that when the *Singh* panel held that res judicata did not bar the government's removability claim, it was because Florida community control itself was not a "term of imprisonment" under the INA. But the *Singh* opinion entirely omits an analysis of the INA's definition of "term of imprisonment" based on a term of "incarceration or confinement" which had been operative for over a decade by the time *Singh* was issued. *See* 8 U.S.C. § 1101(a)(48)(B); *see also* Pub. L. 104-208, title III, § 322 (Sept. 30, 1996) (creating the provision).

Maharaj's argument is foreclosed by this Court's holding in *Herrera* that house arrest constitutes imprisonment under the INA's definition of an aggravated felony. *Herrera*, 811 F.3d at 1300-01. First, Maharaj has failed to meaningfully distinguish community control from house arrest for purposes of *Herrera*'s applicability. Under Florida law, community control is defined as "a form of intensive, supervised custody in the community" and "is an individualized program in which the freedom of an offender is restricted within the community, home, or noninstitutional residential placement and specific sanctions are imposed and enforced." Fla. Stat. § 948.001(3). Additionally, we have stated that community control is "a form of in-house arrest." *Anderson v. Sec'y, Fla. Dep't of Corr.*, 752 F.3d 881, 885 (11th Cir. 2014) (describing criminal history of federal habeas appellant). Because of Florida's legal definition of community control, and this Court's interpretation of community control, Maharaj's sentence of two years of community control is

subject to *Herrera*'s holding that house arrest constitutes a term of imprisonment under the INA. *See Herrera*, 811 F.3d at 1300-01; *Anderson*, 752 F.3d at 885; Fla. Stat. § 948.001(3).

Second, Maharaj argues that *Herrera* is not binding because it involved our review of the BIA's interpretation of an ambiguous statute. Although this Court in *Herrera* explained generally that the BIA's reasonable interpretation of an ambiguous statute was entitled to deference, this Court did not discuss deference specifically or whether 8 U.S.C. § 1101(a)(48)(B) was ambiguous. *See Herrera*, 811 F.3d at 1300. Rather, this Court applied ordinary tools of statutory construction, notwithstanding its reference to the BIA's "reasonabl[e] conclu[sion]," in determining that Herrera was sentenced to a term of imprisonment because of his house arrest. *See id.* at 1300-01.

Finally, even if *Herrera* did not foreclose his argument, Maharaj's community control sentence is still a "term of imprisonment" of at least one year based on a plain reading of the statute. *See* 8 U.S.C. § 1101(a)(48)(B). The definition of a "term of imprisonment" refers to a period of "incarceration *or* confinement," suggesting that "confinement" has a different and broader meaning than "incarceration," just as this Court held in *Herrera*. *See* 8 U.S.C. § 1101(a)(48)(B) (emphasis added); *Herrera*, 811 F.3d at 1301; *see also Reiter*, 442 U.S. at 339. The definition also includes "any suspension of the imposition or execution of that imprisonment *or* sentence," again supporting that a "term of imprisonment" under the INA includes more than just being held in prison, as this Court in *Herrera*

also held.  *See* 8 U.S.C. § 1101(a)(48)(B) (emphasis added); *Herrera*, 811 F.3d at 1301; *see also Reiter*, 442 U.S. at 339.

Further, the dictionary definitions of "incarceration" and "confinement" support that "confinement" encompasses more than being held in prison.  At the time of the relevant expansion of the INA's definition of "aggravated felony," Black's Law Dictionary defined "incarceration" as "imprisonment" or "confinement in a jail or penitentiary." *Incarceration*, BLACK'S LAW DICTIONARY (6th ed. 1990).  It defined "confinement" as "[s]tate of being confined; shut in; imprisoned; detention in penal institution.  Confinement may be by either a moral or physical restraint, by threats of violence with a present force, or by physical restraint of the person." *Confinement*, BLACK'S LAW DICTIONARY (6th ed. 1990).  Its most recent definition of "incarceration" is "[t]he act or process of confining someone; imprisonment." *Incarceration*, BLACK'S LAW DICTIONARY (12th ed. 2024).  Its most recent definition of "confinement" is "[t]he act of imprisoning or restraining someone; the quality, state, or condition of being imprisoned or restrained." *Confinement*, BLACK'S LAW DICTIONARY (12th ed. 2024).  The Merriam-Webster dictionary defines "incarceration" as "confinement in a jail or prison," *Incarceration*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/incarceration (last visited July 24, 2026); "confinement" as "an act of confining" or "the state of being confined," *Confinement*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/confinement (last visited July 24, 2026); and "confine" as "to hold within a location" or "to keep

within limits," *Confine*, MERRIAM-WEBSTER, https://www.mer-riam-webster.com/dictionary/confine (last visited July 24, 2026). Maharaj's two-year sentence of community control sentenced him to "a form of intensive, supervised custody in the community" and his "freedom . . . [was] restricted within the community, home, or noninstitutional residential placement," which is plainly a type of confinement.

## II.  CONCLUSION

Accordingly, whether this Court applies *Herrera* as binding precedent or analyzes the plain meaning of the statute, Maharaj's sentence of two years of community control constituted at least a one-year term of imprisonment under the INA.  Thus, Maharaj was convicted of an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(F), which causes his arguments under the deprivation of judicial review and fundamental unfairness prongs of 8 U.S.C. § 1326(d) to fail.  Accordingly, we affirm.

**AFFIRMED.**